**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE No.06-81041-CIV-MIDDLEBROOKS/JOHNSON

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

vs.

JAMIE SOLOW,

     Defendant,

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, GRANTING
PLAINTIFF LEAVE TO AMEND**

_____This Cause comes before the Court on Defendant's Motion to Dismiss (DE 7),

filed February 16, 2007.  The Court has reviewed the record and is fully advised in the premises.

**I.  Plaintiff's Complaint**

     Plaintiff Securities and Exchange Commission ("SEC") brought a five-count complaint

against Defendant Jamie Solow ("Solow") on November 8, 2006.  The SEC alleges that Solow

1) violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule

10b-5 promulgated thereunder; 2) violated Section 17(a) of the Securities Act of 1933

("Securities Act"); 3) aided and abetted violations by Archer Alexander Securities Corp.

("Archer") of Section 17(a) of the Exchange Act; 4) aided and abetted Archer's violations of

Section 15(c)(3) of the Exchange Act and Rule 15c3-1 thereunder; and 5) aided and abetted

Archer's violations of Section 17(a) of the Exchange Act and Rule 17a-5(a)(2) thereunder.

     These alleged violations stem from Solow's practice of trading in new issues of inverse

1

floating rate collateralized mortgage obligations ("inverse floaters").  Inverse floaters are defined by the National Association of Securities Dealers ("NASD") as high-risk investments suitable to sophisticated investors. *See* NASD Notice to Members 93-73.

The Complaint alleges that Archer had in place various policies regarding the trading of inverse floaters, and that Solow intentionally disregarded these policies.  One of these policies required Solow to trade on a riskless principal basis, which means that when a dealer receives a purchase order from a customer, he purchases the requested security in a transaction that is proximate in time to the customer's order.  Archer's policies allegedly required Solow to have a willing buyer in place for any security that he purchased.  Plaintiff SEC alleges that Archer's CEO discussed this restriction with Solow on more than one occasion.

Another Archer policy allegedly required Solow to get authorization from the CEO before entering into any specific transaction or trade.  After obtaining this pre-approval, Solow was required to fax trade tickets to Archer and the clearing firm.  The complaint alleges that Archer did not follow these procedures, purchasing inverse floaters for settlement one to two months after the trade date.  It is claimed that these improper trades committed Archer to proprietary positions without its knowledge or approval.  It is further alleged that Solow falsified trade tickets to make it appear that his transactions conformed to Archer's policies.  As a result of these alleged improprieties, Archer submitted inaccurate reports required by the securities laws.

The Complaint also alleges fraudulent sales of unsuitable securities, claiming that Solow did not tell his risk-averse retail customers that he was investing for them in high-risk inverse floaters.  Plaintiff claims that Solow actually told risk-averse customers that the inverse floaters were in fact a suitable investment.  He allegedly told customers that government sponsored

enterprises, such as Fannie Mae, guaranteed the principal on such investments.  However, this guarantee applies only if the positions are held to maturity, and interest rate changes could extend the maturity date into the future.

As a basis for the claims for violating the books and records, net capital, and FOCUS report filing requirements, Plaintiff argues that Defendant's improper conduct caused Archer to violate these rules.  His alleged concealment of his improper inverse floater trades resulted in Archer's general ledger not reflecting these positions.  As a result, Archer's net capital computations were inaccurate throughout 2003, and it continued to do business while undercapitalized.  This also resulted in Archer filing inaccurate FOCUS reports.

## II.  Legal Analysis

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true.  *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984).  Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v.  Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

As fraud claims are a part of this action, Plaintiff's complaint must also satisfy the provisions of Fed. R. Civ. P. 9(b).[1]  However, when considering the question of whether or not a

---

[1](b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

pleading of fraud is alleged with adequate particularity in a securities law context, a court must not read Rule 9(b) of the Federal Rules of Civil Procedure to abrogate the notice pleading requirements of the Federal Rules of Civil Procedure. *See Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985), *see also SEC v. Physicians Guardian,* 72 F. Supp. 2d 1342, 1352 (M.D.Fla. 1999).

### A. Claims for Fraudulent Inverse Floater Trading

A violation occurs under Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder when there is (1) a misrepresentation or omission, (2) that was material, (3) which was made in the offer and sale of a security [Section 17(a)(1)] or in connection with the purchase or sale of securities [Section 10(b) and Rule 10b-5], (4) scienter, and (5) the involvement of interstate commerce, the mails, or a national securities exchange. *See SEC v. Gane*, 2005 U.S. Dist. LEXIS 607, 28-29 (S.D. Fla. 2005), *citing* 15 U.S.C. § 77q(a)(1) (2004); 15 U.S.C. § 78j(b) (2004); *see also United States SEC v. Corporate Rels. Group, Inc.*, 2003 U.S. Dist. LEXIS 24925, at *24 (M.D. Fla. 2003); *see also SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)(noting that essentially the same elements are required under Section 17(a) and Rule 10b-5).

For the first claim, violations of section 10(b) and rule 10b-5, Defendant argues that the complaint fails to sufficiently allege material misrepresentations or omissions and fails to detail how Solow falsified trade tickets.  However, plaintiff is correct in its argument that the complaint alleges multiple instances of potential fraud, including dates and the nature of the alleged omissions.  *See* Comp. ¶¶ 28 a-e, 30 a-c, 41 a-d.

The central problem with the Plaintiff's complaint, however, is that for every count it

simply realleges all the paragraphs noted in the above-captioned summary section.  There was no effort by the Plaintiff to state with particularity which specific allegations apply to which specific count, thereby impeding Defendant's ability to discern the exact nature of the complaint against him.  Recently the Eleventh Circuit has held that this represents "shotgun pleading" in a securities action.  The court in *Wagner v. First Horizon Pharm. Corp.* stated that a Plaintiff failed to satisfy Rule 9(b) in a securities action when he simply realleged and incorporated by reference all his factual allegations into the substantive count sections. 464 F.3d 1273, 1279 (11th Cir. 2006).[2]  Just as in the *Wagner* case, here there is no linkage between the facts summary and the substantive counts.  Based on the Eleventh Circuit's holding, Plaintiff's claim does not satisfy Rule 9(b) as currently plead.

I reach the same result as to the claim of unsuitable investment recommendations.  The elements of an unsuitability claim brought under the antifraud provisions are (1) that the securities purchased were unsuited to the buyer's needs; (2) that the defendant knew or reasonably believed the securities were unsuited to the buyer's needs; (3) that the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) that, with scienter, the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (5) that the buyer justifiably relied to its detriment on the defendant's fraudulent conduct.  *See Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993).

---

[2]"With this observation, we do not pass on whether there are sufficient factual predicates in the large fact section prior to the substantive counts that would state a claim with the required particularity. We are simply noting that there are not enough facts in the substantive counts, disregarding the incorporation clauses." Id.

The complaint again does not link the facts section to the substantive counts.  While the facts section may well contain sufficient particularity to sustain the claims brought, they must be tied directly to each individual count to give proper notice to Solow.

### B. Aiding and Abetting Claims

Liability for aiding and abetting a securities violation occurs "if some other party has committed a securities law violation, if the accused party has general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation." *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1045 (11th Cir. 1986).

Here the complaint alleges in the facts section that Archer committed books and records violations, along with violations of net capital and FOCUS reporting requirements.  Plaintiff states that Solow had an awareness that his role was part of improper activity, as he was concealing trades and falsifying trade tickets.  The SEC addresses the knowledge prong by alleging that because Solow was a registered representative of Archer, he was required to know of Archer's obligations to maintain accurate books and records.

Although Plaintiff may argue that the aiding and abetting counts should not be subject to Rule 9(b), the Wagner Court held otherwise.  "Even securities claims without a fraud element must be pled with particularity pursuant to Rule 9(b) when that nonfraud securities claim is alleged to be part of a defendant's fraudulent conduct." *Wagner*, 464 F.3d at1280.  Here the aiding and abetting counts are alleged to be part of Solow's fraudulent conduct, so they must be plead with particularity as well.  Specific allegations from the facts section must be linked to and stated in the substantive counts.

6

In holding that Plaintiff's complaint as written does not satisfy *Wagner,* I am not passing judgment on whether all the facts listed in the facts section would be adequate to state viable securities fraud claims.  I find only that the Plaintiff has failed to give adequate notice by not specifying which facts support each separate count.  It may well be that once this defect has been corrected, a viable claim will exist.

Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (DE 7) is GRANTED WITH LEAVE FOR PLAINTIFF TO AMEND.  Plaintiff shall have ten (10) days from the date of this order in which to amend its complaint.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 22nd day of March 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE


copies to counsel of record